

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-28-2001

# USA v. Day

Precedential or Non-Precedential:

Docket 01-1684

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"USA v. Day" (2001). *2001 Decisions.* Paper 277.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/277

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 28, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1684

UNITED STATES OF AMERICA

v.

ROGER LEE DAY,
        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. Nos. 00-cr-00701-1 and 01-cr-00037-1)
District Judge: Hon. Eduardo C. Robreno

Submitted Under Third Circuit LAR 34.1(a)
October 30, 2001

Before: SLOVITER, NYGAARD, and AMBRO,
Circuit Judges

(Filed: November 28, 2001)

        ROBERT P. FULTON, ESQUIRE
        150 South Easton Road
        Glenside, PA 19038

        Counsel for Appellant

          MICHAEL L. LEVY
          United States Attorney
          ROBERT A. ZAUZMER
          Assistant United States Attorney,
           Chief of Appeals
          BERNADETTE MCKEON
          Assistant United States Attorney
          615 Chestnut Street, Suite 1250
          Philadelphia, PA 19106

          Counsel for Appellee

OPINION OF THE COURT

AMBRO, Circuit Judge:

Roger Lee Day appeals the enhancement of his sentence for bank robbery under the United States Sentencing Guidelines ("U.S.S.G."). Pursuant to a plea agreement, Day pled guilty before the District Court for the Eastern District of Pennsylvania to two counts of bank robbery. At sentencing, the District Court adopted the recommendation in the presentence investigation report that Day's sentence be enhanced two levels because he made a "threat of death" while committing the robberies. U.S.S.G. S 2B3.1(b)(2)(F).[1] This threat consisted of Day's passing notes to tellers at the banks he robbed that read, "Put some money on the counter. No dye packs. I have a gun." The District Court heard arguments on the appropriateness of this enhancement and concluded that the enhancement was warranted under this Court's holding in United States v. Figueroa, 105 F.3d 874 (3d Cir. 1997). In Figueroa, the defendant used a note that read in relevant part,"I have a gun. Give me all the money." Id. at 876.

In this appeal, Day argues that Figueroa does not apply to this case because the Sentencing Guidelines in effect at that time required an "express threat of death" while the

_____

1. U.S.S.G. S 2B3.1(b) addresses specific offense characteristics for robbery. Subsection 2B3.1(b)(2)(F) states in full:"[I]f a threat of death was made, increase by 2 levels."

2

Guideline has since been amended to require only a"threat of death." He contends that the removal of the word "express" somehow narrowed the scope of this provision and that the Commentary supports this interpretation. We disagree and thus affirm Day's sentence.

I. Jurisdiction and Standard of Review

We have jurisdiction over this appeal under 28 U.S.C. S 1291 and 18 U.S.C. S 3742(a). Section 3742(a) provides that a "defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence . . . (2) was imposed as a result of an incorrect application of the sentencing guidelines . . . ." Our review of the District Court's application and interpretation of the Sentencing Guidelines is plenary. United States v. Hallman, 23 F.3d 821, 823 (3d Cir. 1994).

II. Discussion

Day concedes that, if not for a 1997 amendment to the Sentencing Guidelines, his case appears "strikingly similar" to Figueroa.2 The amendment to which he refers took effect on November 1, 1997. It deleted the word "express" from the phrase "express threat of death," modified the accompanying Commentary to acknowledge that either an explicit or implicit threat would suffice, and slightly altered the Commentary language to explain the provision's intent to raise the offense level in cases in which the offender instills in a reasonable victim a fear of death. 3

_____

2. Prior to the amendment, U.S.S.G. S 2B3.1(b)(2)(F) read: "[I]f an express
threat of death was made, increase by 2 levels."

3. The Commentary, as amended, provides as follows:

      "A threat of death," as used in subsection (b)(2)(F), may be in the
      form of an oral or written statement, act, gesture, or combination
      thereof. Accordingly, the defendant does not have to state
expressly
      his intent to kill the victim in order for the enhancement to
apply.
      For example, an oral or written demand using words such as "Give
      me the money or I will kill you", "Give me the money or I will pull
      the pin on the grenade I have in my pocket","Give me the money or
      I will shoot you", "Give me your money or else (where the defendant

3

The only question we must answer is whether this amendment to U.S.S.G. S 2B3.1(b)(2)(F) subsequent to Figueroa could have invalidated that case. We conclude, to the contrary, that by removing the word "express" from the enhancement criteria, the Sentencing Commission did no more than clarify its approval of the result reached in Figueroa and similar cases decided by our sister courts of appeals.

Even when S 2B3.1(b)(2)(F) required an "express" threat of death, we held in Figueroa that the exact words "I have a gun" would suffice to trigger a two-point sentence enhancement. Day argues, however, that under the amended Guideline, in which the word "express" has been removed, the same words somehow no longer qualify as a threat of death. This argument does not make sense. The deletion of the word "express" plainly broadened the Guideline rather than narrowed it. Even if, contrary to Figueroa, the words "I have a gun" did not constitute an express threat of death, under the current Guideline language they would still qualify for the enhancement because they are an implicit threat of death. We thus agree with the Seventh Circuit's decision in United States v. Gibson, 155 F.3d 844 (7th Cir. 1998), which held that the words "I have a gun" can constitute a threat of death under the amended Guideline provision. Id. at 847.

Notably, we already anticipated this case in the Figueroa opinion. At that time, we reached the obvious conclusion that our result would be the same -- in fact, it would be even more clearly correct -- under the amended Guideline. We wrote that

> [w]hile we do not doubt that our result is correct under
> section 2B3.1(b)(2)(F) and the commentary as it is now

_____

> draws his hand across his throat in a slashing motion)", or "Give me
> the money or you are dead" would constitute a threat of death. The
> court should consider that the intent of this provision is to provide
> an increased offense level for cases in which the offender(s) engaged
> in conduct that would instill in a reasonable person, who is a victim
> of the offense, a fear of death.

U.S.S.G. S 2B3.1(b)(2)(F), cmt. n.6 (2001).

4

written, we take note of the circumstance that the United States Sentencing Commission has proposed an amendment to the commentary to make clear that the Commission's intent has been in accord with the majority position we now are joining.

Figueroa, 105 F.3d at 880. Likewise, the dissent in Figueroa argued that the word "express" in the Guideline indicated that it could not apply to an implicit threat such as "I have a gun," but that after the proposed amendment took effect, that difficulty would disappear. Id. at 881-82. That amendment passed exactly as we anticipated, and we see no reason now to reach a different result than the one we predicted.

The primary argument that Day offers for his interpretation is that the explanatory comment accompanying the amendment demonstrated the Sentencing Commission's intent to depart from Figueroa. He points out in particular that the explanatory comment does not explicitly approve Figueroa but does refer to other cases, namely United States v. Robinson, 86 F.3d 1197 (D.C. Cir. 1996) (finding an express threat of death where appellant had only used a note stating, "Give me a pack of 20s or I will shoot somebody in here now."), and United States v. Murray, 65 F.3d 1161 (4th Cir. 1995) (finding an express threat of death where the defendant stated,"Give me three stacks of $20s. Don't give me a dye pack. I have a gun pointed at you . . . . You think I'm playing?"). In addition, he notes that the explanatory comment refers to the "combination of the defendant's actions and words" as the basis for an enhancement. Our examination of the explanatory comment, however, shows Day's argument to be unconvincing.4

_____

4. The text of the explanatory comment reads:

This amendment addresses a circuit court conflict regarding the application of the "express threat of death" enhancement in S 2B3.1 (Robbery). The amendment adopts the majority appellate view which holds that the enhancement applies when the combination of the defendant's actions and words would instill in a reasonable person in the position of the immediate victim (e.g., a bank teller) a greater
amount of fear than necessary to commit the robbery. See, e.g.,

In the first place, even if the Commission's explanatory comment had made it into the Commentary itself (which it did not), we would not be required to follow it to the extent it conflicts with or misinterprets the Guideline. Stinson v. United States, 508 U.S. 36, 38 (1993). In this case, a reading of the amendment that barred implicit threats of death (which "I have gun" surely is to the extent that it is not explicit) would flatly contradict the language of S 2B3.1(b)(2)(F) itself.

Second, and more importantly, nothing in the explanatory comment suggests a rejection of Figueroa. On the contrary, the comment states that the amendment adopts the "majority appellate view," which is also the view we adopted in Figueroa. See Figueroa, 105 F.3d at 878-79 ("[I]n light of the commentary's direction to consider the effect of the threat upon the reasonable victim, we find the reasoning of the Courts of Appeals for the Fourth, Seventh, Eighth, Ninth, Tenth, and District of Columbia Circuits more persuasive."). The majority appellate position provides that whether a threat of death is express depends in part on the perception of the reasonable recipient of the threat rather than solely on whether the perpetrator made an explicit threat to kill the victim. Id. at 877. We agree that the explanatory comment did not mention Figueroa , but that hardly means that it rejected it. Likewise, the references to Robinson and Murray as examples of adequate threats of death do not undermine the validity of Figueroa. The threat in Figueroa may have been less explicit, but nowhere does the Commentary provide that Robinson and Murray represent the only examples of language that would qualify for the enhancement. On the contrary, we cited

_____

       United States v. Robinson, 86 F.3d 1197, 1202 (D.C. Cir. 1996)
       (enhancement applies if (1) a reasonable person in the position of
       the immediate victim would very likely believe the defendant made
       a threat and the threat was to kill, and (2) the victim likely thought
       his life was in peril); United States v. Murray , 65 F.3d 1161, 1167
       (4th Cir. 1995) ("any combination of statements, gestures, or actions
       that would put an ordinary victim in reasonable fear for his or her
       life is an express threat of death").

U.S.S.G. app. C, Amendment 552 (1997).

approvingly to both Robinson and Murray in the Figueroa opinion. Figueroa, 105 F.3d at 877.

Third, and finally, Day incorrectly emphasizes the language referring to "words and actions" in the

explanatory comment. The Commission's examples plainly demonstrate that the robber need not use both words and actions to communicate a threat of death. See, e.g., Robinson, 86 F.3d at 1198 (finding an express threat of death where appellant used only a note); Murray , 65 F.3d at 1166 (finding an express threat of death where the defendant only orally threatened to use his gun). Moreover, the Commentary itself sanctions words alone as enough by providing that " `[a] threat of death,' as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof." U.S.S.G. S 2B3.1(b)(2)(F), cmt. n.6. There is thus no merit to Day's argument that a threat of death requires both words and actions together.

III. Conclusion

The 1997 amendment to the Sentencing Guidelines on which Day relies did not alter our holding in Figueroa. If anything, the amendment only reaffirmed the outcome in that case. In this context, Figueroa applies almost exactly to the facts before us, and thus the judgment of the District Court is affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit